IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FILED
APR 0 8 2015
U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301

UNITED STATES OF AMERICA,

v.   Criminal Action No. 2:15-cr-3

JONATHAN SCHRADER,
    Defendant.

## OPINION/ REPORT AND RECOMMENDATION CONCERNING PLEA OF GUILTY IN FELONY CASE

This matter has been referred to the undersigned Magistrate Judge by the District Court for purposes of conducting proceedings pursuant to Federal Rule of Criminal Procedure 11. Defendant, Jonathan Schrader, in person and by counsel, Brian Kornbrath, appeared before me on April 6, 2015. The Government appeared by Assistant United States Attorney Paul Camilletti. The Court determined that Defendant was prepared to enter a plea of "Guilty" to Count One of the Indictment.

The Court proceeded with the Rule 11 proceeding by first placing Defendant under oath.

The Court inquired of Defendant whether he was a citizen of the United States. Defendant responded that he is a citizen. The undersigned asked Defendant whether he understood that if he were not a citizen of the United States, by pleading guilty to a felony charge he would be subject to deportation at the conclusion of any sentence; that he would be denied future entry into the United States; and that he would be denied citizenship if he ever applied for it. Defendant stated that he understood.

The Court determined that Defendant's plea was pursuant to a written plea agreement, and asked the Government to tender the original to the Court. The Court asked counsel for the Government if the agreement was the sole agreement offered to Defendant. The Government responded that it was and counsel for Defendant confirmed the same. The Court asked counsel for the Government to summarize the written plea agreement. Defendant stated that the agreement as

summarized by counsel for the Government was correct and complied with his understanding of the agreement. The Court **ORDERED** the written plea agreement filed.

The Court next inquired of Defendant concerning his understanding of his right to have an Article III Judge hear the entry of his guilty plea and his understanding of the difference between an Article III Judge and a Magistrate Judge. Defendant thereafter stated in open court that he voluntarily waived his right to have an Article III Judge hear and accept his plea and voluntarily consented to the undersigned Magistrate Judge hearing and accepting his plea, and tendered to the Court a written Waiver of Article III Judge and Consent To Enter Guilty Plea Before Magistrate Judge, which waiver and consent was signed by Defendant and countersigned by Defendant's counsel and was concurred in by the signature of the Assistant United States Attorney appearing.

Upon consideration of the sworn testimony of Defendant, as well as the representations of his counsel and the representations of the Government, the Court finds that the oral and written waiver of Article III Judge and consent to enter guilty plea before a Magistrate Judge was freely and voluntarily given and the written waiver and consent was freely and voluntarily executed by Defendant, Jonathan Schrader, only after having had his rights fully explained to him and having a full understanding of those rights through consultation with his counsel, as well as through questioning by the Court. The Court **ORDERED** the written Waiver and Consent to Enter Guilty Plea before a Magistrate Judge filed and made part of the record.

The undersigned then reviewed with Defendant Count One of the Indictment and the elements the Government would have to prove, charging him with possession of stolen explosives, in violation of 18 U.S.C. § 842(h). The undersigned then reviewed with Defendant the statutory penalties applicable to an individual adjudicated guilty of the felony charges contained in Count One

of the Indictment, the impact of the sentencing guidelines on sentencing in general, and inquired of Defendant as to his competency to proceed with the plea hearing. From said review the undersigned Magistrate Judge determined Defendant understood the nature of the charges pending against him and understood the possible statutory maximum sentence which could be imposed upon his conviction or adjudication of guilty on Count One was imprisonment for a term of not more than ten (10) years; understood that a fine of not more than $250,000.00 could be imposed; understood that both fine and imprisonment could be imposed; understood he would be subject to a period of at least three (3) years of supervised release; and understood the Court would impose a special mandatory assessment of $100.00 for the felony conviction payable within forty (40) days following entry of his plea. Defendant also understood that his sentence could be increased if he had a prior firearm offense, violent felony conviction, or prior drug conviction. He also understood he might be required by the Court to pay the costs of his incarceration and supervised release.

The undersigned also reviewed with Defendant his waiver of appellate and collateral attack rights. Defendant understood that pursuant to his plea agreement, he was waiving his right to appeal his conviction and sentence to the Fourth Circuit Court of Appeals on any ground whatsoever, including those grounds set forth in 18 U.S.C. § 3742. Defendant further understood that under his plea agreement, he was waiving his right to challenge his conviction and sentence in any post-conviction proceeding, including any proceeding under 28 U.S.C. § 2255. Defendant understood, however, that he was reserving the right to raise claims of ineffective assistance of counsel or prosecutorial misconduct that he learned about after the plea hearing, and agreed that he was unaware of any ineffective assistance of counsel or prosecutorial misconduct in his case at this time.

From the foregoing, the undersigned determined that Defendant understood his appellate rights and knowingly gave up those rights pursuant to the conditions contained in the written plea agreement.

The undersigned Magistrate Judge further examined Defendant relative to his knowledgeable and voluntary execution of the written plea bargain agreement, and determined the entry into said written plea bargain agreement was both knowledgeable and voluntary on the part of Defendant. The undersigned then inquired of Defendant regarding his understanding of the written plea agreement. Defendant stated he understood the terms of the written plea agreement and also stated that it contained the whole of his agreement with the Government and no promises or representations were made to him by the Government other than those terms contained in the written plea agreement.

The undersigned Magistrate Judge further inquired of Defendant, his counsel, and the Government as to the non-binding recommendations and stipulation contained in the written plea bargain agreement and determined that Defendant understood, with respect to the plea bargain agreement and to Defendant's entry of a plea of guilty to the felony charge contained in Count One of the Indictment, the undersigned Magistrate Judge would write the subject Report and Recommendation and would further order a pre-sentence investigation report be prepared by the probation officer attending the District Court. The undersigned advised the Defendant that the District Judge would adjudicate the Defendant guilty of the felony charged under Count One of the Indictment. Only after the District Court had an opportunity to review the pre-sentence investigation report, would the District Court make a determination as to whether to accept or reject any recommendation or stipulation contained within the plea agreement or pre-sentence report. The undersigned reiterated to the Defendant that the District Judge may not agree with the recommendations or stipulation contained in the written agreement. The undersigned Magistrate

Judge further advised Defendant, in accord with Federal Rule of Criminal Procedure 11, that in the event the District Court Judge refused to follow the non-binding recommendations or stipulation contained in the written plea agreement and/or sentenced him to a sentence which was different from that which he expected, he would not be permitted to withdraw his guilty plea. Defendant and his counsel each acknowledged their understanding and Defendant maintained his desire to have his plea of guilty accepted.

Defendant also understood that his actual sentence could not be calculated until after a pre-sentence report was prepared and a sentencing hearing conducted. The undersigned also advised, and Defendant stated that he understood, that the Sentencing Guidelines are no longer mandatory, and that, even if the District Judge did not follow the Sentencing Guidelines or sentenced him to a higher sentence than he expected, he would not have a right to withdraw his guilty plea. Defendant further stated his attorney showed him how the advisory guideline chart worked but did not promise him any specific sentence at the time of sentencing. Defendant stated that he understood his attorney could not predict or promise him what actual sentence he would receive from the sentencing judge at the sentencing hearing. Defendant further understood there was no parole in the federal system, although he may be able to earn institutional good time, and that good time was not controlled by the Court, but by the Federal Bureau of Prisons.

The Court heard testimony from Special Agent Greg Perry of the Bureau of Alcohol, Tobacco, Firearms, and Explosives. On February 9, 2015, Special Agent Perry received a call from Randolph County Sheriff Mark Brady. Sheriff Brady informed him that he had received a call from a deputy transporting a juvenile to the youth detention center in Romney, West Virginia. That juvenile told the deputy that he had some friends, including Defendant, who were in possession of

some C-4. The juvenile stated that another juvenile, by the initials L.H., had stolen the C-4 from his father and had transferred it to Defendant. The juvenile indicated that L.H. and Defendant planned to used the C-4 to blow up the federal building and Davis Trust Bank in Elkins, West Virginia. The next day, on February 10, 2015, a local FBI agent in Romney spoke to the juvenile; the juvenile provided the same account.

On February 12, 2015, Special Agent Perry interviewed L.H.'s father, John Hempel. Mr. Hempel stated that he had been in possession of C-4. Specifically, he had two (2) 1.25 lb boxes of C-4. Mr. Hempel stated that he did not think his son had the C-4, as he thought he had destroyed it about ten (10) years by burning it. Mr. Hempel gave permission for his son to be interviewed at the youth detention center in Parkersburg, West Virginia. On February 13, 2015, L.H. was interviewed. L.H. claimed that his father had C-4 and other explosives, and that Defendant was familiar with his residence because Defendant used to babysit L.H. L.H. stated that Defendant had stolen two (2) blocks of C-4 as well as some blasting caps. L.H. said that Defendant hid the C-4 and blasting caps in an outbuilding behind his mother's residence in Elkins. The outbuilding was located behind Daddy Day Care on Diamond Street, in Elkins, within the Northern District of West Virginia.

On February 13, 2015, agents obtained federal search warrants for Defendant's mother's residence on Diamond Street; Defendant's person and personal belongings; and the outbuilding behind Daddy Day Care. During execution of the warrants, agents located Defendant. Defendant agreed to show agents where the explosive material was. Defendant directed agents to the outbuilding behind Daddy Day Care, where agents seized C-4, 49 slip-on boosters, and two (2) blasting caps. After being Mirandized, Defendant was interviewed. He told officers that L.H. had stolen the C-4 from his father, and that L.H. had traded the C-4 to Defendant for a promise that Defendant would give L.H. $800-900 to use for a 1911 pistol and a Smith and Wesson pistol. The

C-4 seized was military-grade, M112, blocks of C-4. One and one-half bars were seized. The C-4 had traveled in interstate commerce, as it was manufactured in Shreveport, Louisiana. The C-4 seized met the definition of explosive material as defined in federal law.

Defendant stated he heard, understood, and did not disagree with Special Agent Perry's testimony. The undersigned United States Magistrate Judge concludes the offense charged in Count One of the Indictment are supported by an independent basis in fact concerning each of the essential elements of such offense. That independent basis is provided by Special Agent Perry's testimony.

Thereupon, Defendant, Jonathan Schrader, with the consent of his counsel, Brian Kornbrath, proceeded to enter a verbal plea of **GUILTY** to the felony charge in Count One of the Indictment.

Upon consideration of all of the above, the undersigned Magistrate Judge finds that Defendant is fully competent and capable of entering an informed plea; Defendant is aware of and understood his right to have an Article III Judge hear and accept his plea and elected to voluntarily consent to the undersigned United States Magistrate Judge hearing his plea; Defendant understood the charges against him, not only as to the Indictment as a whole, but in particular as to Count One of the Indictment; Defendant understood the consequences of his plea of guilty, in particular the maximum statutory penalty to which he would be exposed for Count One; Defendant made a knowing and voluntary plea of guilty to Count One of the Indictment; and Defendant's plea is independently supported by Special Agent Perry's testimony which provides, beyond a reasonable doubt, proof of each of the essential elements of the charges to which Defendant has pled guilty.

The undersigned Magistrate Judge therefore recommends Defendant's plea of guilty to Count One of the Indictment herein be accepted conditioned upon the Court's receipt and review of this Report and Recommendation.

The undersigned further directs that a pre-sentence investigation report be prepared by the adult probation officer assigned to this case.

Defendant, through counsel, requested that he be released pending further proceedings in this matter. Defendant's counsel proffered that Defendant could reside with her mother at her residence in Elkins, West Virginia, and that Defendant's mother was willing to serve as a third-party custodian. Defendant's counsel also proffered that placing Defendant on 24-hour home incarceration with electronic monitoring would adequately ensure Defendant's appearance and the safety of the community. The Government opposed release, noting that this investigation originally involved threats that Defendant and others intended to blow up the federal building and a bank in Elkins and use firearms to shoot the first responders. The Government further stated that several of the firearms and half of a block of C-4 have not yet been recovered.

The Court makes the following findings:

1. Previously, Defendant had a somewhat unstable living situation; however, he now has a stable residence that he could live at pending further proceedings in this matter.

2. Defendant has a mental health history; however, his condition is treatable with medications.

3. Before his arrest, Defendant was completely cooperative with the investigating agents.

4. All of the C-4 except for one-half a block has been recovered, and all but one (1) blasting cap has been recovered. There is no evidence before the Court that Defendant could come back into possession of those items.

5. All but one (1) firearm received by Defendant have been recovered; the other firearm has been accounted for by investigating agents.

6. There is no credible evidence before the Court that Defendant and others intended to use the C-4 to blow up the federal building and a bank in Elkins and shoot the first responders.

Given these findings, the Court finds that placing Defendant on home incarceration with electronic monitoring and under the guardianship of his mother would adequately ensure both his appearance

and the safety of the community. Accordingly, the Probation Office is **DIRECTED** to conduct a home inspection of Defendant's mother's residence and provide a report to counsel for the parties and the Court. Defendant is **REMANDED** to the custody of the United States Marshal Service pending further proceedings in this matter, including conclusion of the home inspection. If Defendant's mother's residence is determined to be suitable, the Court shall enter a further Order directing that Defendant be released to his mother, pursuant to home incarceration with electronic monitoring.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 8 day of April, 2015.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE